**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| RON FRANCO,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., et al.,<br><br>　　　　Defendants. | Case No. 16-cv-03335-BLF<br><br>**ORDER GRANTING MOTIONS TO DISMISS FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND**<br><br>[RE: ECF 59, 66] |

Defendants CIG Financial, LLC ("CIG") and Wells Fargo Bank, N.A. ("Wells Fargo") move to dismiss Plaintiff Ron Franco's claims against them for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and the California Consumer Credit Reporting Agencies Act ("CCRAA"), California Civil Code § 1785.25(a). For reasons discussed below, the motions are GRANTED WITH LEAVE TO AMEND.

**I.　BACKGROUND[1]**

Plaintiff filed for Chapter 13 bankruptcy protection on September 5, 2013 and his plan was confirmed on January 7, 2014. First Am'd Compl. ("FAC") ¶¶ 93, 97, ECF 55. On August 11, 2015, Plaintiff "ordered a three bureau report from Equifax, Inc. to ensure proper reporting by Plaintiff's Creditors." *Id.* ¶ 98. He alleges that this report ("August 2015 Credit Report") included thirteen different trade lines containing inaccurate, misleading, or incomplete information. *Id.* ¶ 99. Plaintiff neither attaches a copy of the August 2015 Credit Report nor

---

[1] Plaintiff's well-pled factual allegations are accepted as true for purposes of the motion to dismiss. *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).

provides specifics regarding the alleged inaccuracies contained therein. *Id.* He asserts only that "multiple trade lines continued to report Plaintiff's accounts with past due balances, inaccurate balances, in collections, and/or charged off. Some accounts even failed to register that Plaintiff was making payments on the account through Plaintiff's Chapter 13 plan." *Id.*

Plaintiff disputed the inaccurate trade lines via certified mail sent to three different credit reporting agencies ("CRAs"), Experian, Equifax, Inc., and TransUnion, LLC on February 11, 2016. *Id.* ¶ 100. Each CRA received Plaintiff's dispute letter and in turn notified the entities that had furnished the disputed information ("furnishers") by means of automated credit dispute verifications ("ACDVs"). *Id.* ¶ 102.

Plaintiff ordered a second three bureau report from Equifax, Inc. on April 11, 2016 ("April 2016 Credit Report"). *Id.* ¶ 103. Plaintiff alleges that at that time a number of furnishers, including CIG and Wells Fargo, improperly were reporting Plaintiff's accounts as having balances and past due balances, which was inconsistent with Plaintiff's confirmed Chapter 13 plan. FAC ¶¶ 103-13.

Plaintiff filed this action on June 15, 2016, asserting violations of the FCRA and CCRAA against multiple CRAs and furnishers. Compl., ECF 1. CIG moved to dismiss Plaintiff's complaint and instead of opposing CIG's motion, Plaintiff filed the operative FAC. CIG and Wells Fargo now move to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(6).

## II. LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)

(internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III. DISCUSSION

The FAC contains two claims, one for violation of the FCRA (Claim 1) and the other for violation of the CCRAA (Claim 2). CIG and Wells Fargo seek dismissal of both claims under Rule 12(b)(6).[2]

### A. FCRA (Claim 1)

The FCRA creates a private right of action against furnishers for noncompliance with duties imposed under 15 U.S.C. § 1681s-2(b). *Gorman*, 584 F.3d at 1154. Section 1681s-2(b) imposes certain obligations on a furnisher, such as a duty to conduct an investigation, when the furnisher receives notice from a CRA that a consumer disputes information reported by the furnisher. *Id.* A plaintiff is required to plead and prove four elements to prevail on an FCRA claim against a credit furnisher: "(1) a credit reporting inaccuracy existed on plaintiff's credit report; (2) plaintiff notified the consumer reporting agency that plaintiff disputed the reporting as inaccurate; (3) the consumer reporting agency notified the furnisher of the alleged inaccurate information of the dispute; and (4) the furnisher failed to investigate the inaccuracies or further failed to comply with the requirements in 15 U.S.C. § 1681s-2(b) (1)(A)-(E)." *Denison v. Citifinancial Servicing LLC*, No. C 16-00432 WHA, 2016 WL 1718220, at *2 (N.D. Cal. Apr. 29, 2016). A furnisher's duties under § 1681s-2(b) of the FCRA arise "only after the furnisher receives notice of dispute from a CRA." *Gorman*, 584 F.3d at 1154.

Plaintiff's FCRA claim against CIG and Wells Fargo is subheaded "Failure to Reinvestigate." FAC ¶ 115-16. Plaintiff alleges that CIG and Wells Fargo "violated section 1681s-2(b) by failing to conduct a reasonable investigation and re-reporting misleading and

---

[2] Wells Fargo joins in CIG's motion and provides limited additional argument regarding the grounds raised by CIG.

3

inaccurate account information." *Id.* ¶ 118. Presumably, this claim is based upon the conduct of CIG and Wells Fargo upon receiving notice of Plaintiff's dispute regarding the August 2015 Credit Report. Plaintiff alleges that he sent dispute letters to Experian and other CRAs regarding unidentified inaccuracies contained in the August 2015 Credit Report, and that the CRAs in turn sent Plaintiff's dispute to each furnisher by means of an ACDV. *Id.* ¶¶ 100-02.

CIG and Wells Fargo argue that Plaintiff has not alleged facts sufficient to satisfy the first element of a claim under § 1681s-2(b), the existence of a credit reporting inaccuracy. The Court agrees for the reasons discussed below. Before turning to the parties' arguments regarding inaccuracy, however, the Court addresses CIG's request (joined by Wells Fargo) for judicial notice of documents filed in Plaintiff's bankruptcy case. *See* RJN, ECF 60. The request is GRANTED, as the documents are proper subject for judicial notice. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

### 1. Vague Allegations Regarding Contents of August 2015 Credit Report

CIG and Wells Fargo first point out that although Plaintiff argues that their reporting was "inaccurate and or incomplete," FAC ¶ 122, Plaintiff does not allege what facts are inaccurate or missing from the August 2015 Credit Report upon which his FCRA claim is based. The Court agrees. As discussed above, Plaintiff's allegations regarding the contents of the August 2015 Credit Report are quite vague. He alleges only that "multiple trade lines continued to report Plaintiff's accounts with past due balances, inaccurate balances, in collections, and/or charged off. Some accounts even failed to register that Plaintiff was making payments on the account through Plaintiff's Chapter 13 plan." FAC ¶ 99. Plaintiff argues that more specificity is provided at paragraph 106 of the FAC. *See* Pl.'s Opp. at 4-5, ECF 75. However, that paragraph describes the contents of the April 2016 Credit Report that Plaintiff obtained to ensure that his accounts had been updated following his letters of dispute regarding the earlier August 2015 Credit Report. *See* FAC ¶¶ 103-06. Plaintiff does not allege that he disputed the April 2016 Credit Report. Therefore, inaccuracies in the April 2016 Credit Report cannot form the basis of his claim.

### 2. Reporting After Confirmation of Chapter 13 Plan

More fundamentally, to the extent that Plaintiff claims that it was inaccurate for CIG to

4

report balances or past due balances after plan confirmation, that theory of liability has been rejected by courts in this district and other districts within the Ninth Circuit. *See, e.g., Artus v. Experian Info. Sols., Inc.*, No. 5:16-CV-03322-EJD, 2017 WL 346022, at *5 (N.D. Cal. Jan. 24, 2017) (collecting cases); *Doster*, 2017 WL 264401, at *6 ("[A]s a matter of law it is not misleading or inaccurate to report a delinquent debt during the pendency of a bankruptcy."); *Polvorosa v. Allied Collection Serv., Inc.*, No. Case No. 2:16–CV–1508 JCM (CWH), 2017 WL 29331, at *3 (D. Nev. Jan. 3, 2017) ("[R]eporting delinquencies during the pendency of a bankruptcy or during a bankruptcy's automatic stay is not itself a violation of the FCRA.").

Plaintiff argues that these decisions fail to recognize that a bankruptcy court's order confirming a Chapter 13 plan constitutes a binding final judgment regarding the rights and liabilities of the debtor and his or her creditors. According to Plaintiff, because a confirmed plan modifies the original debts, any post-confirmation reporting of pre-confirmation delinquencies or balances is inaccurate. It is true that "[t]he provisions of a confirmed plan bind the debtor and each creditor." 11 U.S.C. § 1327(a). Thus a creditor seeking payment on a debt is entitled only to those payments provided for under the plan, and "any issue decided under a plan is entitled to *res judicata* effect." *In re Blendheim*, 803 F.3d 477, 486 (9th Cir. 2015). However, the Court declines to make the logical leap urged by Plaintiff that these authorities, governing the relationships between parties to a bankruptcy action, make it a violation of the FCRA for a furnisher to report a historically accurate pre-confirmation debt or delinquency. Regardless of how the rights and obligations of the parties to a bankruptcy are modified by a Chapter 13 plan, the original debt did exist prior to confirmation and Plaintiff has cited no authority suggesting that bankruptcy proceedings "erase" that historical fact for purposes of the FCRA.

Plaintiff's reliance on *In re Luedtke*, No. 02-35082-svk, 2008 WL 2952530 (Bankr. E.D. Wis. July 31, 2008), is misplaced. In *Luedtke*, the bankruptcy court concluded that a creditor whose claim was modified by a Chapter 13 confirmation order had violated that order by continuing to report the original debt to CRAs. *Id.* at *6. The court suggested that in addition to seeking sanctions for violation of the confirmed plan, the debtor also could have sought relief under the FCRA. *Id.* In making that suggestion, the bankruptcy court appeared to assume that the

creditor's reporting of the original debt would have constituted an inaccuracy under the FCRA. *Id.* at \*5. That view, expressed in *dicta* by a bankruptcy court outside the Ninth Circuit almost a decade ago, has not been adopted by the courts in this district. At least one court outside the district has found the decision to be irrelevant to determination whether a plaintiff had pleaded a viable FCRA claim. *See, e.g., Wylie v. TransUnion, LLC*, No. 3:16-CV-102, 2017 WL 835205, at \*5 n.6 (W.D. Pa. Mar. 2, 2017) ("[T]he question before the Court is whether Defendants reported accurate information, not whether Defendant violated the bankruptcy code.") (internal quotation marks and citation omitted).

Moreover, with respect to the many debtors who fail to make all required plan payments, the original debt terms ultimately are reinstated. *See Blendheim*, 803 F.3d at 487. Indeed, historically accurate debts may be reported even after discharge, so long as the credit report indicates that the debts were discharged in bankruptcy. *See Mortimer v. Bank of Am., N.A.*, No. C-12-01959 JCS, 2013 WL 1501452, \*9-11 (N.D. Cal. Apr. 10, 2013) (furnisher's reporting that the debt had been delinquent during the pendency of the bankruptcy was historically accurate and thus not actionable under the FCRA where report also indicated that the debt had been discharged in bankruptcy).

Plaintiff's counsel argued at the hearing that allowing reporting of pre-confirmation delinquencies or balances after a Chapter 13 plan has been confirmed will deprive debtors of significant benefits that they expect to obtain through Chapter 13 bankruptcy. That issue is one for Congress to resolve, not this Court. The Court's task in evaluating Plaintiff's FAC is to determine whether the facts alleged therein make out a plausible claim that moving parties' credit reporting was inaccurate. The Court simply is not persuaded that the reporting of a balance or past due balance after plan confirmation is per se inaccurate under the FCRA.

However, it appears to be an open question whether such reporting could satisfy the inaccuracy requirement if the report is unaccompanied by any indication that the consumer is in bankruptcy. *See Devincenzi v. Experian Info. Sols., Inc.*, No. 16-CV-04628-LHK, 2017 WL 86131, at \*7 (N.D. Cal. Jan. 10, 2017) (declining to decide whether allegations that the "credit report contained no indication at all that the debts were the subject of a pending bankruptcy . . .

6

would be sufficient to state a claim" but granting plaintiff leave to attempt to assert FCRA claim based on that theory). It is this Court's view that it may well be possible for a plaintiff to allege facts showing that the reporting of a pre-confirmation debt or delinquency is materially misleading absent any reference to a pending Chapter 13 bankruptcy in the report, at least where a confirmed plan governs the timing and amounts of post-confirmation payments on the debt.

Plaintiff has not alleged such facts here, as he has not identified any particular inaccuracy contained in the August 2015 Credit Report upon which his claim is based, and has not stated whether the August 2015 Credit Report mentioned his bankruptcy.

### 3. Metro 2 Format

In addition to his theory of FCRA liability based on the effect of plan confirmation, Plaintiff asserts a related theory based on industry standards regarding credit reporting. He devotes more than thirty paragraphs of the FAC to a tutorial on industry standards and in particular the "Metro 2 format" adopted by the Consumer Data Industry Association ("CDIA"). *See* FAC ¶¶ 37-71. According to Plaintiff, Metro 2 provides instruction on what updates must be made when a bankruptcy is filed, and deviation from the Metro 2 format is inaccurate or misleading. The Ninth Circuit has not spoken on the effect of the Metro 2 format, if any, on the obligations of furnishers under the FCRA. However, district courts within the Ninth Circuit overwhelmingly have held that a violation of industry standards is insufficient, without more, to state a claim for violation of the FCRA. *See, e.g., Doster*, 2017 WL 264401, at *5 (collecting cases); *Mestayer v. Experian Info. Sols., Inc.*, No. 15-CV-03645-EMC, 2016 WL 7188015, at *3 (N.D. Cal. Dec. 12, 2016).

The out-of-district cases cited by Plaintiff do not persuade this Court to take a contrary view. In *Dreher v. Experian Info. Sols., Inc.*, No. 3:11-CV-00624-JAG, 2013 WL 2389878, at *7 (E.D. Va. May 30, 2013), the district court held that industry standards could be considered at the summary judgment stage as part of the totality of evidence regarding the reasonableness of Experian's failure to identify the main source of disputed information. That ruling does not advance Plaintiff's argument that deviation from Metro 2 constitutes a per se inaccuracy under the FCRA. In *Nissou-Rabban v. Capital One Bank (USA), N.A.*, No. 15CV1675 JLS (DHB), 2016

7

WL 4508241, at *5 (S.D. Cal. June 6, 2016), the district court held that the plaintiff had alleged a claim under the FCRA where she alleged that Metro 2 was Synchrony's chosen method of reporting and that Synchrony's deviation from Metro 2 might be misleading to such an extent as to affect credit decisions. Courts in this district have found such allegations to be insufficient. *See, e.g., Mestayer*, 2016 WL 7188015, at *3 (credit report that deviated from Metro 2 was not misleading where report disclosed bankruptcy); *see also Doster*, 2017 WL 264401, at *5 (collecting cases). This Court finds the latter decisions to be better reasoned and therefore concludes that allegations that a credit report deviated from the Metro 2 format is insufficient, without more, to state a claim under the FCRA.

The Court does not mean to suggest that Metro 2 is wholly irrelevant to the evaluation of a claim asserted under the FCRA. It may be that allegations of deviations from the Metro 2 format could bolster other allegations of inaccuracy or be relevant to allegations of negligence on the part of the reporting entity. However, Plaintiff's reliance on Metro 2 as an independent source of liability under the FCRA is unavailing.

Accordingly, the motions to dismiss Plaintiff's FCRA claim brought by CIG and Wells Fargo are GRANTED.

**B.     CCRAA (Claim 2)**

Subject matter jurisdiction in this case is based on federal question with respect to Plaintiff's FCRA claim and supplemental jurisdiction with respect to his CCRAA claim. *See* FAC ¶ 13. Plaintiff has yet to allege a viable federal claim, and if he fails to do so this Court will decline to exercise supplemental jurisdiction over his state law claim. *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims.") (internal quotation marks and citation omitted).

Accordingly, the Court DECLINES TO ADDRESS the merits of Plaintiff's CCRAA claim against CIG and Wells Fargo at this time.

## IV. LEAVE TO AMEND

Having concluded that CIG and Wells Fargo are entitled to dismissal of Plaintiff's FCRA claim, the Court must determine whether leave to amend is warranted. In deciding whether to grant Plaintiff leave to amend his pleading, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1052. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* However a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id.*

The first factor (undue delay), second factor (bad faith), and fourth factor (undue prejudice) do not weigh against granting leave to amend at this time, although the Court may well have a different view in the event that Plaintiff's counsel fails to address the deficiencies addressed herein and persists in submitting pleadings consisting primarily of copy-and-paste boilerplate allegations. The third factor (failure to cure deficiencies) weighs slightly against granting leave to amend, as Plaintiff previously amended his pleading. Finally, with respect to the fifth factor (futility of amendment), the Court has grave reservations whether Plaintiff will be able to state a viable FCRA claim against CIG. However, because it is not clear that Plaintiff cannot do so, the Court will grant him leave to amend.

If Plaintiff chooses to amend his FCRA claim, he shall allege with specificity what reporting is attributable to each defendant and shall attach a copy of each report or allege the contents of the offending trade lines verbatim. Failure to do so will be deemed an admission that Plaintiff is incapable of pleading specific facts giving rise to liability under the FCRA.

## VI. ORDER

(1) The motions to dismiss brought by Defendants CIG and Wells Fargo are
GRANTED WITH LEAVE TO AMEND as to Plaintiff's FCRA claim; the Court

declines to address Plaintiff's CCRAA claim unless and until Plaintiff states a viable federal claim;

(2) Leave to amend is limited to the FCRA claim discussed in this order and the related CCRAA claim; Plaintiff may not add new claims or parties without express leave of the Court;

(3) Any amended pleading shall be filed on or before May 9, 2017; and

(5) Failure to meet the May 9 deadline to file an amended complaint or failure to cure the deficiencies identified in this Order will result in a dismissal of Plaintiff's claims with prejudice.

Dated: April 18, 2017

BETH LABSON FREEMAN
United States District Judge